UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OFFWHITE PRODUCTIONS, LLC, d/b/a
OFFWHITE CO.,

                              Plaintiff,

               -v-

OFF-WHITE LLC,

                              Defendants.

19 Civ. 6267 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff OffWhite Productions, LLC, d/b/a OffWhite Co. ("OffWhite"), brings this action against defendant Off-White, LLC ("Off-White") for infringement of its registered trademark OFFWHITE CO.®, which OffWhite uses "in connection with its marketing, product design and related services." Dkt. 30 ("Amended Complaint" or "AC") ¶ 1. OffWhite brings three claims: for trademark infringement in violation of 15 U.S.C. § 1114(1), false designation of origin and false description in violation of 15 U.S.C. § 1125(a)(1)(A), and common law unfair competition under New York law.[1] Pending now is Off-White's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the AC for failure to state a claim. For the following reasons, the Court grants the motion and dismisses the AC in its entirety.

---

[1] OffWhite voluntarily dismissed its fourth claim, for unfair competition under the Lanham Act, in its opposition to the motion to dismiss. *See* Dkt. 38 ("Pl. Opp'n") at 18–19.

I.     **Background**

   A.     **Facts**[2]

      1.     **The Parties**

Plaintiff OffWhite is incorporated in New Jersey, with its principal place of business in New York, New York. AC ¶ 4. OffWhite "provides wholistic [sic] creative solutions to creators of new goods and services integrating innovative marketing, advertising, and other business approaches to product and brand development." *Id.* ¶ 9. "[A] key aspect of plaintiff's marketing and product design and branding solutions is to aid in the distribution of huge volumes of original content on digital social publishing platforms." *Id.* ¶ 10. The company has done business as "OffWhite" "since at least July of 2001." *Id.* ¶ 11. To market its own business-to-business marketing and branding services to potential customers, OffWhite maintains a website, www.offwhitedesign.com; a Twitter account, @offwhitedesign; and a social media presence on Facebook, Instagram, and Behance. *Id.* ¶¶ 11–12. OffWhite has also "widely promoted" itself through "online display and advertising campaigns across a variety of Internet and mobile platforms," resulting in "many thousands of viewer impressions on its" website. *Id.* ¶¶ 13–14.

The AC further alleges that "since 2004" OffWhite has added "OFFWHITE branded products to its panoply of offerings," *id.* ¶ 15, "most recently" by "offering its own innovative consumer products under the OFFWHITE trademark by bringing to market a line of innovative

---

[2] The facts are drawn primarily from the Amended Complaint, Dkt. 30. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

durable goods for consumers," *id.* ¶ 16, "includ[ing] items such as housewares and toys," *id.* ¶ 17.

Defendant Off-White is incorporated in Illinois, with its principal place of business in Nashville, Tennessee. *Id.* ¶ 5. It is the "American division of a Milan-based fashion house." *Id.* ¶ 1. Off-White was founded in 2012 and rapidly gained prominence under creative director Virgil Abloh. *Id.* ¶¶ 24–25. Off-White "is known for offering apparel such as $1,000 sweatshirts as well as collaborations and endorsements from a wide range of celebrity creators and admirers." *Id.* ¶ 25. Its products are sold by luxury retailers and it has been profiled by "major media outlets such as the New York Post" and fashion industry publications like Vogue. *Id.* ¶ 54. The AC alleges, on information and belief, that "more recently," Off-White "has begun to market, and sell," *inter alia*, "home furnishings, housewares and stationery" under the Off-White brand. *Id.* ¶ 26. Off-White operates the website www.off---white.com as well as its own retail stores in the United States. *Id.* ¶¶ 29–30.

### 2. OffWhite's Trademark

In March 2014, OffWhite applied to register OFFWHITE CO. as a word mark with the U.S. Patent and Trademark Office ("PTO"). *Id.* ¶ 22. The registration included the following description of services:

> Advertising and marketing services, namely, *creating corporate and brand identity and strategy for others*; advertising and marketing services, namely, *promoting the brands, goods and services of others*; brand concept, brand design in the nature of creative marketing design, brand development services and brand strategy services in the nature of *the development of marketing strategies and concepts for corporate and individual clients*; brand evaluation services; brand imagery consulting services; brand positioning services; branding services, namely, consulting, development, management, marketing and strategy in the nature of *developing marketing strategies and concepts of brands for businesses and/or individuals*; providing business research and insight in the field of brand strategy, brand creation, brand development, and the selling and marketing of brands; innovation consulting services, namely, *advising others in the areas of brand creation, brand development, brand strategy and the selling and marketing*

3

> *of brands*; innovation consulting services, namely, *advising others in the areas of product design, product development and production, packaging design and product and packaging strategy*; innovation consulting services, relating to products *using social media to assist others in the sale and distribution of their products and services*.

*Id.* (quoting U.S. Reg. No. 4652026) (emphasis added). OffWhite's application to register OFFWHITE CO. was published in September 2014 and granted in December 2014. *Id.* ¶ 23.

### 3. Off-White's Alleged Infringement

OffWhite alleges that Off-White's "rapid brand growth has sent the range of products and other offerings under its infringing Off-White brand hurdling [sic] headlong into the natural zone of expansion of" its own OffWhite brand. *Id.* ¶ 18. OffWhite cites an "exploding variety of Off-White branded products includ[ing] a wide range of durable consumer goods such as housewares and products." *Id.* ¶ 19. The AC gives one example of this: "a product [Off-White] identifies as a 'yellow industrial belt,' meant as a fashion accessory," *id.* ¶ 20, which the AC alleges consumers are likely to confuse with the "set of functional construction tools designed for children" sold by OffWhite, *id.* ¶ 17. The AC alleges that "consumers making actual purchasing decisions are likely to confuse [Off-White's] wide variety of goods with those of [OffWhite]." *Id.* ¶ 20. The AC alleges that this "constitut[es] reverse confusion" and is likely to "result[] in the eventual extinction of" OffWhite's trademark and brand. *Id.*

OffWhite alleges further injury by Off-White's "social media, website promotion, public relations, SEO and celebrity-outreach campaigns." *Id.* ¶ 50. These, it alleges, "have succeeded in displacing plaintiff's URL offwhitedesign.com from Google's top search results," *id.*, led to the creation of a Wikipedia entry for "Off-White (Company)" which discusses Off-White, *id.* ¶ 51, and caused "many thousands" of Twitter posts using the hashtags #OffWhite or #OFFWHITE to be tweeted in reference to Off-White, *id.* ¶¶ 45, 48–49.

Finally, OffWhite alleges that on January 2, 2019, some two months *before* OffWhite sent a cease and desist letter, *id.* ¶ 37, Off-White filed an application to register a design "that is unmistakably similar to a logo used by [OffWhite] but not registered[.]" *Id.* ¶ 43. The AC alleges that the two designs are "confusing similar" and characterizes Off-White's action as a "spite" registration. *Id.* ¶ 44.

### B. Procedural History

On July 7, 2019, OffWhite initiated this action, Dkt. 1, and on July 22, 2019, successfully filed its Complaint, Dkt. 9. On September 9, 2019, Off-White filed a motion to dismiss, Dkt. 27, and a supporting memorandum of law, Dkt. 28. On September 30, 2019, OffWhite filed its Amended Complaint. AC. On October 21, 2019, Off-White filed its motion to dismiss the AC, Dkt. 31, and a supporting memorandum of law, Dkt. 32 ("Def. Mem."). On November 15, 2019, OffWhite filed its opposition. Pl. Opp'n. On November 26, 2019, Off-White filed a reply. Dkt. 39 ("Reply").

## II. Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By contrast, a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and alterations omitted). Such factual enhancement is necessary to "nudge[] [a] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Although this standard "does not impose a probability requirement at the pleading stage," it does require a complaint to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support plaintiff's claims. *Id.* at 556. Where a complaint fails to do so, "[t]his basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the [C]ourt." *Id.* at 558 (ellipsis omitted) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1216). Otherwise, "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Id.* at 559. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the [Court] to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" and must be dismissed. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)).

Finally, although the Court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

**III.   Discussion**

The Court begins by setting out the legal standards applicable to the three remaining claims: two under federal law and one under state law. The Court then focuses on Off-White's argument that the AC fails to plausibly allege a likelihood of consumer confusion, an element of all three claims. Drawing all inferences in OffWhite's favor, the Court agrees with Off-White that the AC fails to plausibly plead this element.

6

1. **Applicable Legal Standards**

The AC brings claims for trademark infringement under 15 U.S.C. § 1114(1), false designation of origin and false description in violation of 15 U.S.C. § 1125(a)(1)(A), and common law unfair competition under New York law.

The *prima facie* case required for the two federal claims is the same. For each, the AC must allege sufficient facts to establish, first, that the plaintiff's mark is entitled to protection, and second, that the defendant's "use of its mark is likely to cause consumers confusion as to the origin or sponsorship of [its] goods." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (trademark infringement); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (same); *see also Trombetta v. Novocin*, 414 F. Supp. 3d 625, 630 (S.D.N.Y. 2019) (false designation of origin); *Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 730 (S.D.N.Y. 2004) (Chin, J.) (same), *aff'd*, 159 F. App'x 270 (2d Cir. 2005).

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50–51 (2d Cir. 2019) (citation omitted). Thus, "[t]he elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law 'mirror the Lanham Act claims,' except that unfair competition 'requires an additional showing of bad faith.'" *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18 Civ. 12069 (JPO), 2020 WL 774237, at *4 (S.D.N.Y. Feb. 18, 2020) (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005)).

### 2. Likelihood of Confusion

A likelihood of consumer confusion is a necessary element of all three claims. "The crucial issue in an action for trademark infringement is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods [or services] in question." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (alterations omitted) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978)).

Ultimately, "satisfaction of the likelihood-of-confusion standard requires a 'probability of confusion, not a mere possibility.'" *Guthrie Healthcare Sys.*, 826 F.3d at 37 (quoting *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 121 (2d Cir. 2001)); *see also Tiffany & Co. v. Costco Wholesale Corp.*, No. 17-2798-CV, 2020 WL 4743020, at *4 (2d Cir. Aug. 17, 2020) ("[T]he mere possibility of confusion is not enough. To prevail in a trademark infringement action, a plaintiff must prove 'a probability of confusion affecting numerous ordinary prudent purchasers.'" (quoting *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 383 (2d Cir. 2005) (ellipsis omitted))); *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998); *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1510 (2d Cir. 1997). At the motion to dismiss stage, the Court must determine whether the AC has alleged enough concrete facts that, if true, would satisfy this standard. *See Twombly*, 550 U.S. at 558.

In determining whether there is consumer confusion under the Lanham Act, courts use the "*Polaroid* test," which considers eight factors identified by the Second Circuit in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961). These are:

> (1) [the] strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6)

>evidence that the imitative mark was adopted in bad faith; (7) respective quality
>of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009); *Polaroid Corp.*, 287 F.2d at 495. These eight factors do not all have to be satisfied to establish a claim, and no one factor is dispositive. "The evaluation of the Polaroid factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Tiffany*, 2020 WL 4743020, at *5 (internal quotation marks omitted); *see also Starbucks*, 588 F.3d at 115; *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000).

"Normally, the likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990); *see also Roberts v. Bliss*, 229 F. Supp. 3d 240, 251 (S.D.N.Y. 2017). A complaint must nevertheless contain sufficient facts to plausibly allege a probability of confusion between plaintiff's product or services and those of the alleged infringer. *See Guthrie Healthcare Sys.*, 826 F.3d at 37. "In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a [consumer] will be confused into believing that the plaintiff endorsed the defendant's work." *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (dismissing infringement claim where it was "simply not plausible" that ordinarily prudent consumers would be confused); *cf. Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984) ("[C]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion[.]" (citation omitted)).

Trademark law is "not concerned with mere theoretical possibilities of confusion, deception, or mistake or with *de minimis* situations but with the practicalities of the commercial world[.]" *Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 717 (Fed. Cir. 1992).

Here, the AC articulates two theories as to how consumers might be confused.

First, it alleges "that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused," into thinking that Off-White the fashion house is in fact OffWhite, the business-to-business marketing and brand consultancy. *See Savin Corp.*, 391 F.3d at 456. This theory is easily put to one side, because it is conclusory and unsupported by any pled facts. On the contrary, based on the AC, the companies' core missions are far afield. They operate in different market spaces and target different consumers with different products (Off-White) or services (OffWhite). The AC does not allege facts otherwise. To the extent the AC proceeds on this theory, it clearly does not state a claim. *See Ahmed v. GEO USA LLC*, No. 14 Civ. 7486 (JMF), 2015 WL 1408895, at *3 (S.D.N.Y. Mar. 27, 2015) (granting motion to dismiss trademark infringement claim where complaint's "conclusory" and "broad statements[] devoid of any factual detail" regarding likelihood of consumer confusion were "plainly insufficient as a matter of law"); *see also Pub. Free Will Corp. v. Verizon Commc'ns Inc.*, No. 15 Civ. 6354 (RRM), 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017) (granting motion to dismiss claim of trademark infringement where complaint failed "to allege facts regarding likelihood of confusion that would state a claim to relief that is plausible on its face"); *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 687 F. Supp. 800, 813 (S.D.N.Y. 1988) (granting motion to dismiss trademark infringement claim where "other than conclusory allegations that confusion is likely to occur and three specific occasions of actual confusion, [the counterclaim plaintiff] makes absolutely no allegations regarding those factors").

The AC's second theory is more targeted. It alleges consumer confusion between Off-White's fashion apparel and accessories, on the one hand, and OffWhite's "branded products," on the other. AC ¶ 15. Focused as it is on product offerings by both companies, this claim has greater potential traction than OffWhite's first theory, discussed above, which posits that Off-White's products might cause confusion with the marketing-services aspect of OffWhite's business. Nevertheless, even as to this area, the AC fails to plead sufficient concrete facts to plausibly allege consumer confusion.

The AC's bare-bones allegations as to confusion with OffWhite's nascent consumer products line are limited to the following. The AC alleges that, "most recently," OffWhite has begun "offering its own innovative consumer products under the OFFWHITE[3] trademark by bringing to market a line of innovative durable goods for consumers," *id.* ¶ 16, "includ[ing] items such as housewares and toys," *id.* ¶ 17. The AC provides just one example of such products: "a set of functional construction tools designed for children that allows them to work alongside their parents or under their supervision on real life building and repair projects." *Id.* The AC compares this to Off-White's "yellow industrial belt," which is marketed by Off-White as a "fashion accessory." *Id.* ¶ 20. Finally, the AC alleges that Off-White is expanding its own product offerings to "include[] a wide range of durable consumer goods such as housewares," *id.* ¶ 19, "home furnishings . . . and stationery," *id.* ¶ 26.

Other than its "set of functional [children's] construction tools," AC ¶ 17, the AC does not supply any details as to the "OFFWHITE branded products" included "since 2004" in OffWhite's "panoply of offerings." *Id.* ¶ 15. Nor does the AC offer specifics as to any of the

---

[3] Although the AC refers repeatedly to OffWhite's "OFFWHITE" mark and brand, OffWhite's *registered* mark is for "OFFWHITE CO." *See* Pl. Opp'n at 11; AC ¶ 1.

"innovative consumer products," including "items such as housewares and toys" that OffWhite has "most recently" "[brought] to market" "under the OFFWHITE trademark," *id.* ¶¶ 16–17. Nor does the registration statement for OffWhite's OFFWHITE CO. trademark, filed a decade after the AC alleges OffWhite began producing "OFFWHITE" branded products, shed light on these products. *See id.* ¶ 22. On the contrary, the trademark registration statement, reproduced in full in the AC, is strikingly devoid of any reference to branded products or durable consumer goods. It focuses instead on OffWhite's business-to-business marketing and brand consulting services. *Id.*[4]

OffWhite's claim of consumer confusion therefore pivots on its "OFFWHITE" branded functional children's toys. *See id.* ¶¶ 17, 20. The AC, however, does not supply any factual detail about this set of products other than that it has been "[brought] to market" and is branded with the "OFFWHITE" mark. *Id.* ¶ 16. Viewing all inferences in the light most favorable to OffWhite, as the Court must, the Court credits—barely—that this product both exists and has been sold by OffWhite. Even so, the AC does not plead any facts to support its conclusion that "consumers making actual purchasing decisions are likely to confuse" the origins of its children's construction tools, on the one hand, and Off-White's yellow belt, marketed as a "fashion accessory," on the other. *See id.* ¶ 20. The AC, notably, does not allege a single instance in which a consumer evinced confusion between these products, for example, in a written or oral communication to OffWhite. The AC therefore supplies no factual basis on which to credit that "an appreciable number of ordinarily prudent purchasers [of such products]

---

[4] The closest the registration statement comes is its reference to "*advising others in the areas of* product design, product development and production, packaging design and product and packaging strategy," *id.* ¶ 22 (emphasis added), but this reference is clearly to the consulting services that OffWhite provides.

are likely to be misled, or indeed simply confused" by Off-White's alleged infringement. *See Savin Corp.*, 391 F.3d at 456.

This deficiency is, finally, not redressed by the AC's sweeping contention that "consumers making actual purchasing decisions are likely to confuse defendant's wide variety of goods with those of plaintiff, constituting reverse confusion and likely resulting in the eventual extinction of plaintiff's senior OFFWHITE trademark and brand." *Id.* ¶ 20. That allegation is a classic "legal conclusion[] disguised as [a] factual allegation[]" and as such must be disregarded. *See Thompson v. United States*, No. 17 Civ. 5017 (KPF), 2018 WL 3384440, at *3 (S.D.N.Y. July 11, 2018) (citing *Rolon v. Henneman*, 517 F.3d 140, 148–49 (2d Cir. 2008) ("While we accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor, we are not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." (internal quotation marks, citations, and alterations omitted))), *aff'd*, 795 F. App'x 15 (2d Cir. 2019).

Because the AC's sparse factual allegations fail to plausibly allege the foundational element of consumer confusion, its two Lanham Act claims accordingly fail to state a claim.[5] The same is true of its New York law claim for common law unfair competition, AC ¶¶ 81–85,

---

[5] Off-White argues that the AC's allegations are made even less plausible by a review of OffWhite's website, which it argues is properly before the Court. Def. Mem. at 8 & n.3; Reply at 2, 6–7. OffWhite objects to such a review. Pl. Opp'n at 5–6. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citations omitted) (collecting cases). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." *Id.*; *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). There is a strong argument that the AC incorporates OffWhite's website by reference. *See* AC ¶¶ 11, 13, 14, 50, 53; *see also id.* ¶ 29 (pointing out similarity of Off-White's and OffWhite's website URLs). The Court, however, need not resolve this methodological dispute, because the AC independently fails to plausibly allege consumer confusion.

because, as reviewed above and as OffWhite concedes, Pl. Opp'n at 1, 18, a complaint bringing this claim must also plausibly allege a likelihood of confusion, *see Salvatore Ferragamo S.p.A.*, 2020 WL 774237, at *4.

## CONCLUSION

For the foregoing reasons, the Court grants Off-White's motion to dismiss the Amended Complaint in its entirety. Because OffWhite has had—and availed itself of—the opportunity to amend its complaint, this dismissal is with prejudice in this litigation. For avoidance of doubt, this dismissal does not preclude OffWhite from bringing a separate lawsuit based on products outside the scope of, or events post-dating its AC in, this litigation.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 27 and 31 and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 20, 2020
       New York, New York